IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ELVIE MELISSA WALLACE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 06-0395-WS-M |
| | ) |
| **UAW LOCAL 1639,** | ) |
| | ) |
| **Defendant.** | ) |

**ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss (doc. 102). The Motion has been fully briefed and is ripe for disposition at this time.

**I.    Relevant Background.**

The meandering, circuitous path of this litigation has been well documented in numerous previous orders entered by both this Court and by Magistrate Judge Milling. Nonetheless, at the risk of redundancy, a condensed recap of this labyrinthine litigation history is appropriate not only in the interest of reminding all case participants how we reached this point but also for the purpose of highlighting plaintiff's disingenuous behavior patterns, opportunistic abuse of the litigation process, and chronic evasion of judicial directives that have culminated in the untenable predicament in which she has now placed herself.

Between 2001 and 2004, plaintiff Elvie Melissa Wallace filed no fewer than four lawsuits in this District Court against defendant UAW Local 1639 (plus a fifth related action against another defendant), all or nearly all of them predicated on alleged civil rights violations in connection with her employment at Teledyne Continental Motors. The first three of those actions were dismissed on summary judgment, while the fourth (captioned *Elvie Melissa Wallace v. Teledyne Continental Motors, Local 1639, and Continental Casualty Insurance Company*, and bearing Civil Action No. 04-0593-CB-D) was voluntarily dismissed without prejudice by Wallace eight months after she initiated the action. Senior District Judge Butler permitted her to do so, subject to the caveat that in light of the tremendous expense and

inconvenience Local 1639 had incurred in defending that action due in no small part to Wallace's failure to cooperate in discovery, "[b]efore plaintiff may file any future action based on the facts or claims asserted in the instant action, plaintiff must first pay" Local 1639 the more than $17,000 in attorney's fees and expenses it had accrued in defending that Civil Action No. 04-0593-CB-D.

Wallace did not pay Local 1639's fees and expenses; nonetheless, on June 30, 2006, she sued Local 1639 (and a host of other defendants) in this District Court a fifth time in the case at bar, asserting similar claims to those that had been the subject of Civil Action No. 04-0593-CB-D. Wallace is proceeding *pro se*. This Court enforced Judge Butler's ruling and refused to allow Wallace "to bootstrap allegations of a hostile work environment against Local 1639 in this case by relying on facts that she used or could have used in the 2004 litigation" without first reimbursing Local 1639's attorney's fees and expenses from the 2004 lawsuit. (*See* Order dated December 22, 2006 (doc. 33), at 7.) Nonetheless, an Order (doc. 37) entered on January 29, 2007 allowed Wallace to proceed with her claims against Local 1639 herein subject to the express limitation that such claims must be confined to events that post-dated her return to work in November 2004, such that they are beyond the scope of the 2004 lawsuit. Wallace's dissatisfaction with these boundaries on her claims was evinced by her subsequent filing of a motion seeking *in forma pauperis* status (even though she had already paid the $350 filing fee in this case) in a transparent attempt to have her cake and eat it too, by evading Judge Butler's ruling, wriggling free of responsibility for paying Local 1639's fees and expenses from the 2004 suit, and reviving those previously-abandoned claims with no adverse repercussions to herself now that she had changed her mind again. (*See* doc. 47.) That request was denied. (*See* Order dated May 31, 2007 (doc. 52), at 1 & n.1.)

Magistrate Judge Milling entered a Rule 16(b) Scheduling Order (doc. 46) in late April 2007, and this action proceeded to discovery. By September 2007, the parties had become embroiled in a discovery battle that triggered a breakdown in constructive communications between them, prompting Judge Milling to set the matter for hearing on September 18, 2007. At the conclusion of that hearing, Judge Milling entered an Order (doc. 69) requiring Local 1639 to respond to certain of Wallace's interrogatories by no later than September 28, 2007. The September 18 Order also specified that "[t]he parties agreed that the depositions of the parties

will take place on Tuesday, October 2, 2007, in Mobile, Alabama, beginning with Plaintiff's deposition at 9:00 a.m. and following with Defendant's deposition, namely, the deposition of its President," Robert Dickerson.  (Doc. 69, at 2.)  Because the parties agreed at the hearing that the depositions would be conducted at the offices of a local law firm, the Kullman Firm (which is not counsel of record for any party herein), the September 18 Order listed the street address of those offices to obviate any confusion as to the location of those depositions.[1]  In the wake of the September 18 Order, defendant served a Notice of Deposition on Wallace on September 19, 2007, confirming that her deposition had been set for 9:00 a.m. on October 2, 2007 at the Kullman Firm's offices in Mobile.  This location is approximately 3 miles from plaintiff's address of record, and roughly 260 miles from the offices of defendant's counsel.

Importantly, Wallace never contacted defense counsel in advance of October 2 to apprise him that she did not intend to appear for her deposition at the agreed date, time and location. Moreover, she made herself unavailable telephonically by disregarding the September 18 Order's directive that she "immediately notify the Court and counsel for Defendant of her new home telephone number."  (Doc. 69, at 2.)  Wallace's omission stymied defense counsel's repeated attempts to call her prior to October 2 to confirm her intention to be present for the scheduled deposition.[2]  Nor did Wallace ever contact the Court to request that the October 2

---

[1] On September 20, 2007, Wallace filed a Motion for Reconsideration (doc. 71) interjecting a laundry list of objections to the September 18 Order.  In particular, plaintiff expressed dissatisfaction with Judge Milling's refusal to allow her to pursue interrogatories directed to non-parties, his setting of the depositions to occur at a law office rather than at the federal courthouse, his requirement that plaintiff's deposition precede Dickerson's, his statement that plaintiff could depose Local 1639's president without mention of plaintiff's right to depose 11 other witnesses, the failure of defendant's co-counsel Patrick Nakamura to file a notice of appearance prior to the September 18 hearing (although he filed one immediately thereafter), her belief that defendant should be sanctioned in the amount of $1,400, and the like.  On October 1, 2007, Judge Milling entered an Order (doc. 76) affirming the September 18 Order and providing additional explanation.  Wallace has never suggested that the timing of Judge Milling's Order had any bearing on her conduct on the morning of October 2.

[2] Rather than furnishing the Court and opposing counsel with her home telephone number, Wallace provided merely a fragment of a phone number on her Motion for Reconsideration of September 20.  Indeed, she listed her telephone number as "251 438 468," which is obviously not a complete number, and lacks even the same prefix as her correct number

setting (to which she had expressly agreed at the September 18 hearing) be canceled or continued.

In anticipation of the October 2 depositions, Local 1639's attorney, Patrick Nakamura, drove to Mobile from his offices in Birmingham on October 1, met with his client, and spent the night at a local hotel, all at considerable expense to Local 1639. On the morning of October 2, 2007, Nakamura went to the appointed location to take Wallace's deposition. She did not appear. Instead, at approximately 8:40 a.m., Nakamura was given an envelope that had been delivered to the Kullman Firm that morning by a person who stated that it was being delivered on Wallace's behalf, but left no other message. The envelope contained plaintiff's Motion for Default Judgment (doc. 74), which plaintiff filed with the Clerk's Office that afternoon.[3] Having received no other message regarding the depositions, Nakamura promptly called the telephone number listed for Wallace for the first time on her Motion for Default Judgment. There was no answer, so Nakamura left a message on the answering machine stating that Wallace's deposition was scheduled that morning, advising that he was in Mobile to take her deposition, and inquiring as to whether she intended to attend. Wallace never bothered to return the call. Nakamura waited in the designated location until 10:00 a.m. without ever hearing from plaintiff.

Having been put to substantial expense and inconvenience by virtue of Wallace's unannounced, unexplained non-appearance at her October 2 deposition, Local 1639 requested

---

(251 476-4468). Furthermore, defense counsel's attempts to reach Wallace via her previous home telephone number yielded only a recorded message from the telephone company that her new number was unpublished. Clearly, then, Wallace's course of conduct effectively blocked defense counsel from being able to reach her by phone prior to traveling to Mobile for her October 2 deposition.

[3] In that Motion, Wallace accused Local 1639 of failing to provide accurate, complete and honest responses to her interrogatories. Those discovery responses were served on her on September 27, 2007. She was apparently upset that Local 1639 had interposed certain objections in its responses to those interrogatories, as is expressly permitted by the Federal Rules of Civil Procedure, and that Local 1639 had not furnished the full panoply of information requested because of those objections. Judge Milling ultimately entered an Order (doc. 82) denying the Motion for Default Judgment and concluding that Local 1639's discovery responses were sufficient to comport with its obligations under the discovery rules. Plaintiff's repeated attempts to relitigate that question in the ensuing months have all met with precisely the same result.

that sanctions be imposed and that Wallace be required to reimburse its attorney's fees and expenses reasonably incurred in connection with the aborted deposition. Upon briefing of this request, and after giving Wallace a full and fair opportunity to be heard, Judge Milling entered a 12-page Order (doc. 96) on April 18, 2008 that recounted in detail the history of Wallace's failure to attend her October 2 deposition, concluded that sanctions were properly imposed against her pursuant to Rule 37(d)(1)(A)(i), Fed.R.Civ.P., and determined that Local 1639 had incurred allowable and reasonable attorney's fees and expenses totaling $1,754.05 as a direct result of Wallace's failure to appear. The crux of Judge Milling's reasoning in imposing sanctions was as follows:

> "Plaintiff, after agreeing on the record in the presence of the undersigned judge to appear for her deposition, failed to appear without giving notice to Defendant or obtaining permission from the Court. ... [I]t was clearly understood that the parties would appear for their depositions as agreed and discussed with the Court. It was not anticipated that Plaintiff would unilaterally and without notice to anyone simply decide not to come. ... Nothing prevented Plaintiff from notifying Mr. Nakamura of her decision not to appear for her deposition and that of Defendant in sufficient time for him to cancel his trip to Mobile."

(Order dated April 18, 2008 (doc. 96), at 10-11.) On that basis, Judge Milling ordered Wallace to pay Local 1639's counsel the sum of $1,754.05 by not later than May 19, 2008, as a sanction for her conduct in relation to the October 2 deposition. Judge Milling took pains to advise Wallace repeatedly that "failure to pay the attorney's fees and expenses by that date will result in the dismissal of this action with prejudice, upon motion of Defendant, for her failure to obey the Orders of this Court." (Doc. 96, at 11; *see also* doc. 101, at 1.)

As she has done repeatedly when confronted with judicial directives that are not to her liking, Wallace promptly attempted an end run around the April 18 Order by again requesting *in forma pauperis* status, presumably on the theory that if she were deemed a pauper she might evade financial accountability for her misconduct in discovery. Judge Milling correctly denied the IFP petition on the grounds that IFP status would in no way countermand the discovery sanctions entered against Wallace. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("If a *pro se* litigant ignores a discovery order, he is and should be subject to sanctions like any other litigant. Courts can assess costs and monetary sanctions against IFP litigants."); *Harris v. Forsyth*, 742 F.2d 1277, 1278 (11th Cir. 1984) ("a court has discretion to award costs against

indigents as in other cases") (citation omitted); *Bernard v. Ricketts*, 1993 WL 51197, *1 (9th Cir. Feb. 26, 1993) ("[T]he district court could have assessed monetary sanctions against [plaintiff] despite his apparent poverty."); *Isaac v. American Intercontinental University*, 2007 WL 1959201, *6 (N.D. Ga. June 28, 2007) ("The Court can assess costs and monetary sanctions against plaintiff, in spite of her IFP status.").  However, Judge Milling entered an Order (doc. 101) extending the time period for Wallace to pay the sanction until June 13, 2008.  Two separate attempts by Wallace to obtain reconsideration of Jude Milling's sanction order, one predating the June 13 deadline and one following that deadline, resulted in that ruling being reaffirmed in all material respects.

The June 13 date for compliance with the April 18 Order came and went without any perceptible attempt by Wallace to pay the sanctions assessed against her.  As a result, on June 16, 2008, Local 1639 filed a Motion to Dismiss (doc. 102) requesting that this action be dismissed for Wallace's failure to comply with Judge Milling's orders.

**II.    Analysis.**

District courts possess inherent power to sanction errant litigants before them.  *See Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) ("Courts have the inherent authority to control the proceedings before them, which includes the authority to impose "reasonable and appropriate" sanctions."); *F.J. Hanshaw Enterprises, Inc. v. Emerald River Development, Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001) ("All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders.").  These incidental, inherent powers unquestionably include the power to dismiss an action for failure to abide by court orders.  *See Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985) ("The court's power to dismiss is an inherent aspect of its authority to enforce its orders and insure prompt disposition of lawsuits."); *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983) (same).  Indeed, Rule 41(b), Fed.R.Civ.P., expressly "authorizes a district court to dismiss a complaint for failure to prosecute or failure to comply with a court order or the federal rules." *Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999).

This Court has afforded Wallace a full and fair opportunity to be heard in response to the Motion to Dismiss.  She did not, and could not reasonably, maintain that she was unaware of the

sanction or that she did not know her claims might be dismissed with prejudice if she failed to abide by Judge Milling's rulings. Instead, she has filed a pair of documents (docs. 104, 108) challenging the wisdom of the April 18 Order and complaining that no sanctions should have been imposed against her because defendant's discovery responses were inadequate. The Court understands that Wallace disagrees with Judge Milling's decision to sanction her under Rule 37(d). But a federal court litigant does not have the luxury of picking and choosing which court orders she wants to abide by, and cavalierly disregarding the others. *See generally Glassroth v. Moore*, 335 F.3d 1282, 1303 (11th Cir. 2003) ("The rule of law does require that every person obey judicial orders when all available means of appealing them have been exhausted."); *Vakalis v. Shawmut Corp.*, 925 F.2d 34, 37 (1st Cir. 1991) (recognizing that "Court orders are accorded a special status in American jurisprudence" and that, as a general rule, a party cannot "ignore a court order and then attempt to evade ... sanctions by litigating the validity of the underlying order itself").

Moreover, this Court finds that Wallace's behavior concerning the October 2 deposition was grossly disrespectful of opposing counsel, recklessly irresponsible in light of the agreement she had made to appear for her deposition at that time, and amounted to abdication of her duties as a litigant in this District Court, particularly an experienced litigant for whom this action marks at least her sixth foray into federal court. Wallace attended a hearing before Judge Milling on September 18 during which she agreed to appear for a deposition at a designated location just three miles from her home at 9:00 a.m. on October 2, 2007. She received an Order from Judge Milling and a Notice of Deposition from Nakamura confirming that setting. She knew that Nakamura was relying on her representation that she would appear, and that he would have to travel from Birmingham to take her deposition, at considerable expense to his client. She rendered herself unreachable to Nakamura before October 2 by ignoring Judge Milling's directive that she immediately provide him with her new telephone number, instead giving him an inaccurate, incomplete fragment of a number. She <u>never</u> called or wrote to Nakamura to cancel or continue the deposition. She <u>never</u> petitioned Judge Milling to cancel or continue the deposition. Instead, she unilaterally decided not to show up, without bothering to share that decision with anyone ahead of time. On the morning of the deposition, she sent her emissary to the deposition location to deliver an irrelevant motion for default judgment to opposing counsel,

whom she <u>knew</u> to be waiting for her there.  Such conduct is both extraordinarily discourteous and utterly unacceptable of any federal court litigant.

      Nor is Wallace's behavior excused in any way by her oft-repeated protestations concerning the adequacy of defendant's interrogatory responses.  For starters, Judge Milling found (and this Court agrees) that Local 1639's detailed interrogatory responses and document production dated September 27, 2007, were adequate and compliant with defendant's obligations under the Federal Rules of Civil Procedure.  Even if they were not, this issue is a red herring.  If Wallace were dissatisfied with Local 1639's discovery responses, her remedy was not to renege on her prior agreement to appear for her deposition on October 2.  Defendant's discovery responses had nothing to do with Wallace's deposition and would in no way have impaired her ability to appear for and participate in her deposition as she had previously agreed to do.  Instead, she could have appeared for her deposition, as agreed, and continued the deposition of Dickerson until such time as her objections to Local 1639's discovery responses had been resolved.  But the defect in plaintiff's position is even more fundamental than that.  Even assuming that Local 1639's discovery responses were deficient (they weren't), and even assuming that those deficiencies placed Wallace at a disadvantage with respect to her own deposition (they didn't), those circumstances did not excuse Wallace's failure to notify Nakamura of her decision not to appear for her previously scheduled deposition until after he had spent $1,700 of Local 1639's money to travel to Mobile, obtain lodging, and wait at the designated location for an hour and a half.  Despite her repeated efforts to shift the blame, deflect the focus, and confuse the issues, the inescapable truth is that Wallace was sanctioned not for her belief that defendant's discovery responses were incomplete, nor for her decision not to appear for her deposition on that basis, but instead for her failure to make any attempt to notify defense counsel of her decision in such a manner as to obviate the accrual of significant travel expense and waiting time.  In her numerous filings protesting the entry of sanctions against her, Wallace has <u>never</u> explained why she lacked the common courtesy to pick up the telephone and call Nakamura ahead of time to tell him that she wasn't coming to her deposition until the interrogatory issue was decided, so as to save him a wasted drive to Mobile.  That conduct is the reason why she was sanctioned, and that conduct is simply inexcusable.

      The Court understands that Wallace has suggested in passing that she is impoverished

and unable to pay the $1,754.05 sanction imposed by Judge Milling. The Court also recognizes that the Eleventh Circuit has suggested that dismissal for failure to pay a sanction by an IFP litigant may be an abuse of discretion where "the litigant comes forward showing a true inability to pay." *Moon*, 863 F.2d at 838. But plaintiff has not done so. In particular, Wallace has never come before this Court offering or requesting to pay the sanction on an installment basis. Nothing in her submissions suggests she is unable to do so in small monthly increments of, say, $25 or $50 per month. She states in conclusory terms that she has "tried to borrow and raise the money to pay" (doc. 104, at 7), but she does not provide any details whatsoever to bolster that conclusory representation. This showing is patently inadequate. *See Ebeh v. Tropical Sportswear Int'l Corp.*, 199 F.R.D. 696, 699 (M.D. Fla. 2001) ("Protestations of poverty are not evidence," and plaintiff will not be excused from paying discovery sanction where he has failed to come forward with any evidence of why he could not pay the sanction, or of unsuccessful efforts to obtain funds with which to pay the sanction); *Rickerson v. Woods*, 2007 WL 1106134, *2 (S.D. Ga. Apr. 9, 2007) ("Plaintiff cannot avoid dismissal of his case by relying only upon an earlier establishment of IFP status; he should instead attempt to comply with the sanction or he should detail his unsuccessful efforts to comply with the Court's order."). Plaintiff's bare statement that she has been unable to raise the money to pay the sanction during the last two months does not evince her true inability to pay, much less demonstrate any good-faith, reasonable attempt to comply with the April 18 Order.

      Simply put, Judge Milling provided plaintiff with an eight-week period in which to make arrangements to pay the sanction. Wallace did not pay a single penny during that interval, nor has she come forward with evidence that she did <u>anything</u> during that time period to undertake a good-faith effort to meet this obligation, whether in whole or in part. Instead, Wallace's course of conduct has consistently been to hide the ball, deflect the blame, and distort the issue. Rather than making a constructive attempt to comply with Judge Milling's Order of April 18, Wallace has dug in her heels and argued vociferously that the sanction order is wrong because Local 1639 failed to provide complete responses to her interrogatories. These accusations of impropriety in discovery by Local 1639 have been unequivocally rejected and are actually irrelevant to the reason for her sanctions, yet she persists in rehashing them over and over again. Far from making any legitimate showing that she is unable to pay, Wallace has consistently adopted a

stance of stubborn defiance to Judge Milling's ruling.  By citing her inability to pay in passing, then, even as she repeatedly challenges the correctness of the sanctions order, Wallace is seeking to parlay her financial condition into a convenient excuse to dodge a court order with which she disagrees, without exhibiting any serious, good-faith attempt to comply with that ruling within the confines of her economic limitations.  Such conduct will not be countenanced.

**III.   Conclusion.**

For all of the foregoing reasons, the Court finds that dismissal of this action is appropriate and that no lesser sanction will suffice.  Defendant's Motion to Dismiss (doc. 102) is **granted**.  This action is **dismissed with prejudice** for plaintiff's failure to pay sanctions imposed by Magistrate Judge Milling for her discovery violations.  A separate judgment will enter.

DONE and ORDERED this 9th day of July, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE